IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

In re   )
  )
CATHOLIC BISHOP OF NORTHERN   )
ALASKA,   )
  )
         Debtor,   )
———————————————————)
  )
DEWEY GREEN and MARY READER,   )
  )
         Appellants,   )
  )
         vs.   )
  )    No. 4:14-cv-0010-HRH
UNAATUQ, LLC; NANCY E. GREEN; and   )
LOUIE GREEN, SR.,   )    Br. No. 08-00110 DMD
  )
         Appellees.   )    Adv. No. 11-90002
———————————————————)

O R D E R

Dewey "Stacey" Green and Mary Reader appeal the bankruptcy court's order

granting Unaatuq, LLC's Motion to Enforce Judgment and Related Orders. Oral argument

was not requested and is not deemed necessary.

Background

Catholic Bishop of Northern Alaska (CBNA) filed a Chapter 11 petition in

bankruptcy court on March 1, 2008. At the time of the filing, CBNA owned the Pilgrim

Springs property, which is 320 acres of land located on the Seward Peninsula, north of Nome, Alaska. CBNA had leased the Pilgrim Springs property to Pilgrim Springs, Ltd. (PSL) on November 1, 1969. PSL had a 99-year lease and was granted "the exclusive right to possess and develop the Property."[1]

Louis Green, Sr. served as the caretaker of the Pilgrim Springs property for PSL from 1975 to 1985 or 1987.[2] In a 1992 letter to CBNA, Louis Sr. wrote that "Pilgrim Springs, Ltd. asked myself and my family to serve as caretakers of the Church property from 1975 to the late 1980's."[3] After receiving the letter, CBNA wrote to PSL to express its "concern about those who are squatting on the property, namely, the Green family."[4] In response, PSL advised CBNA that the Green "family broke up" and that it had only given permission to Annie Green[5] to continue to use the property.[6] In 1994, Louis Sr. again became the caretaker of the property for PSL and remained so until the lease was terminated.[7]

---

[1]Docket No. 4-3 at 164.

[2]Docket No. 4-3 at 167.

[3]Docket No. 4-4 at 336.

[4]Docket No. 4-4 at 338.

[5]Annie Green is Louis Sr.'s ex-wife.

[6]Docket No. 4-4 at 342.

[7]Docket No. 4-3 at 167.

Stacey Green is Louis Sr.'s son. Stacey and Mary Reader have long been domestic partners and were married in 2006.

In 1989 or 1990, Stacey selected a site on the Pilgrim Springs property on which to build a cabin.[8] Stacey avers that his father instructed him not to contact PSL about whether it was permissible to build a cabin on the property.[9] After selecting a cabin site, Stacey began building a trail and a bridge and in 1993 started moving materials to the site to construct a cabin.[10] Stacey and Mary aver that they have consistently used the property for camping, berry picking, and walking on the trails they have built and that they have consistently used their cabin and a near-by hot spring.[11] Stacey and Mary have invested approximately $50,000 to build their cabin and make improvements to the cabin and the surrounding property.[12]

In 2008, CBNA sought approval from the bankruptcy court to terminate its lease with PSL so that it could sell the Pilgrim Springs property free and clear of all liens and interests in the property. Louis Sr. was sent notice of CBNA's motion to terminate the lease

---

[8]Docket No. 4-3 at 30.

[9]Docket No. 4-3 at 30.

[10]Docket No. 4-3 at 31.

[11]Docket No. 4-3 at 31 & 35.

[12]Docket No. 4-3 at 35.

as PSL's registered agent.[13]  On December 5, 2008, the bankruptcy court granted CBNA's motion to terminate the 99-year lease of the Pilgrim Springs property .[14]

On July 10, 2009, Tom Buzek, the business administrator for CBNA, asked Stacey and Mary "to consider the possibility of paying rent for having a cabin on the Pilgrim Springs property."[15]  Stacey and Mary "politely declined" the request to pay rent for their use of the Pilgrim Springs property.[16]

On December 17, 2009, CBNA filed its reorganization Plan.[17]  The Plan called for the auction and sale of the Pilgrim Springs property.[18]

Louis Sr. and Nancy commenced a quiet title action in state court against CBNA, claiming title to the entire Pilgrim Springs property by adverse possession.  On January 21, 2010, the bankruptcy court entered an order and judgment that Louis Sr. and Nancy had violated the automatic stay by filing their quiet title action.[19]  On January 29, 2010, Louis Sr. and Nancy filed an appeal of that order and judgment and also sought a preliminary

---

[13]Docket No. 4-3 at 166-167.

[14]Docket No. 4-2 at 235-236.

[15]Docket No. 4-3 at 31 & 35.

[16]Docket No. 4-3 at 31 & 35.

[17]Docket No. 4-4 at 6-7.

[18]Docket No. 4-4 at 7.

[19]Docket No. 4-4 at 145.

injection against the proposed sale.[20]  On February 26, 2010, the bankruptcy court denied their motion for preliminary injunction.[21]  On March 4, 2010, the district court denied their emergency motion for an order staying the sale of the Pilgrim Springs property.[22]

On April 26, 2010, the bankruptcy court entered an order approving the sale of the Pilgrim Springs property to Unaatuq, LLC.[23]  The sale to Unaatuq was made "free and clear" of all interests, including "any claims to title to the Pilgrim Springs Property by Louis Green, Sr. and Nancy Green...."[24]  When CBNA filed its Stipulated Motion seeking approval of the sale of the Pilgrim Springs property, Stacey and Mary were not on the service list and they did not receive actual notice of the Stipulated Motion.[25]

On December 7, 2010, Louis Sr. and Nancy filed a complaint to quiet title in state court against Unaatuq and others.

On January 12, 2011, Unaatuq filed a Complaint to Enforce Orders, Determine Validity of Interest and for Injunctive and Declaratory Relief against Louis Sr. and Nancy

---

[20]Docket No. 4-4 at 145.

[21]Docket No. 4-4 at 143.

[22]Docket No. 4-4 at 160-164.

[23]Docket No. 4-4 at 38.

[24]Docket No. 4-4 at 43.

[25]Docket No. 4-3 at 168, 170 & 179.

in bankruptcy court.[26] The bankruptcy court opened an adversary matter to deal with the complaint. Unaatuq moved for summary judgment on all of its claims and on March 30, 2011, the bankruptcy court granted Unaatuq's motion for summary judgment and declared that Louis Sr. and Nancy had "no right, title or interest in Pilgrim Hot Springs, that Unaatuq owns Pilgrim Hot Springs free and clear of any interest by [Louis Sr. and Nancy], and that [Louis Sr. and Nancy] have no claim against Unaatuq[.]"[27] The bankruptcy court entered judgment on March 30, 2011 enjoining "Louis H. Green and Nancy E. Green, and their successors and assigns, ... from asserting any right, title, claim or interest in Pilgrim Hot Springs based on, or arising from, facts existing prior to the date of this Judgment[.]"[28] The bankruptcy court also ordered Louis Sr. and Nancy to dismiss the December 2010 state-court quiet title action with prejudice.[29]

Stacey avers that he did not "receive[] any notice or any letter from CBNA or Unaatuq ... concerning my cabin on the property and my use of the property until a letter from Unaatuq in June 2013."[30] Stacey further avers that in June 2010 he did see a letter addressed to his father "that stated Pilgrim Springs had been sold" and that his father "had

---

[26]Docket No. 4-1 at 3-25.

[27]Docket No. 4-1 at 41.

[28]Docket No. 4-1 at 45.

[29]Docket No. 4-1 at 45.

[30]Docket No. 4-3 at 32.

no legal right to occupy the Pilgrim Springs property."[31]  Stacey avers that he then "went to Unaatuq's office to discuss [the letter].  I asked that Unaatuq contact me to set up a meeting to discuss my cabin on the property.  Unaatuq did not contact me."[32]  Mary avers that she "never received any notice telling me there was going to be a court hearing ... regarding the sale of the Pilgrim Springs property or that I needed to file an objection with the court in order to avoid having my interest in the cabin site and the trails and other parts of the Pilgrim Springs property ... extinguished."[33]

On August 16, 2013, Unaatuq filed a Motion to Enforce Sale and Related Orders, in which Unaatuq requested that the bankruptcy court order Stacey and Mary and other members of the Green family to vacate the Pilgrim Springs property.[34]  This motion was filed in the main bankruptcy case.  The bankruptcy court construed the motion as seeking further relief from the judgment the court had entered in the adversary proceeding and determined that Unaatuq's motion should have been filed in the adversary case.[35]

---

[31]Docket No. 4-3 at 32.

[32]Docket No. 4-3 at 32.

[33]Docket No. 4-3 at 36.

[34]Docket No. 4-4 at 120-132.

[35]Docket No. 4-4 at 362.

On August 23, 2013, Unaatuq re-filed the motion, now entitled a Motion to Enforce Judgment and Related Orders, in the adversary case.[36] Stacey and Mary were provided notice of Unaatuq's motion.[37] In their opposition to that motion, Stacey and Mary argued that they were entitled to actual notice of the proposed sale of the Pilgrim Springs property, that they had acquired title to a portion of that property through adverse possession, that collateral estoppel did not apply, and that the sale of the property was void because they had been denied due process.[38]

The bankruptcy court agreed that Stacey and Mary had not been provided actual notice of the proposed sale of the Pilgrim Springs property free and clear of all interests.[39] And, the bankruptcy court held that the judgment in the adversary case could not be enforced against Stacey and Mary "as the Greens' successors and assigns."[40] But, the bankruptcy court held that Stacey and Mary were not entitled to actual notice of the proposed sale of the Pilgrim Springs property because they did not have an interest in the

---

[36]Docket No. 4-2 at 3-14.

[37]Docket No. 4-3 at 5-7.

[38]Docket No. 4-3 at 11-28.

[39]Docket No. 4-3 at 179.

[40]Docket No. 4-3 at 180.

property that required notice under 11 U.S.C. § 363.[41]  In order to determine whether Stacey and Mary had such an ownership interest, the bankruptcy court considered whether they could establish an interest through adverse possession.  The bankruptcy court held that their adverse possession claim was tolled as to CBNA while PSL's lease was in effect,[42] that they could not establish that their possession was hostile,[43] and that they could not establish that their possession was notorious or exclusive.[44]  Because they could not establish open, notorious, exclusive and hostile possession of a portion of the Pilgrim Springs property, the bankruptcy court determined that notice by publication was sufficient to apprise them of the proposed sale of the property.[45]

## Standard of Review

"Findings of fact are reviewed under the clearly erroneous standard of review and legal conclusions are reviewed de novo."  In re Mortgage Store, Inc., 773 F.3d 990, 994 (9th Cir. 2014).  "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

---

[41]Docket No. 4-3 at 195.

[42]Docket No. 4-3 at 185-186.

[43]Docket No. 4-3 at 190.

[44]Docket No. 4-3 at 191-193.

[45]Docket No. 4-3 at 193.

that a mistake has been committed.'" <u>Banks v. Gill Distribution Centers, Inc.</u>, 263 F.3d 862, 869 (9th Cir. 2001) (quoting <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573 (1985)).

<u>Discussion</u>

As an initial matter, the court must consider whether the bankruptcy court had the constitutional authority to enter the order granting Unaatuq's motion to enforce the sale and denying Stacey and Mary's request for Rule 60(b) relief. "By statute, Congress authorized bankruptcy judges to 'hear and determine ... all core proceedings,' and to 'enter appropriate orders and judgments.'" <u>Mastro v. Rigby</u>, 764 F.3d 1090, 1093 (9th Cir. 2014) (quoting 28 U.S.C. § 157(b)(1)). "However, as a constitutional matter, 'some claims labeled by Congress as "core" may not be adjudicated by a bankruptcy court' to final judgment." <u>Id.</u> (quoting <u>Executive Benefits Ins. Agency v. Arkison</u>, 134 S. Ct. 2165, 2172 (2014)). "These claims are called 'Stern claims,' so named after the Supreme Court's decision in <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011). <u>Stern</u> claims are claims 'designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter.'" <u>Id.</u> (quoting <u>Arkison,</u> 134 S. Ct. at 2170).

"In <u>Stern</u>, the widow brought an adversary action in her Chapter 11 proceeding to recover damages for her stepson's alleged tortious interference with her expectancy of an inheritance or gift from her deceased husband as a compulsory counterclaim to the stepson's claim against the estate." <u>In re Bataa/Kierland LLC</u>, 496 B.R. 183, 188 (D. Ariz. 2013). "The bankruptcy court entered judgment for the widow, and the stepson appealed.

-10-

The Supreme Court held that the bankruptcy court lacked authority under Article III to enter final judgment on the widow's counterclaim."  Id.

> At the heart of Stern was the determination that, even though the counterclaim in Stern was a core proceeding under the Bankruptcy Code, the widow's claim arose under state common law and was between two private parties, it did not flow from the federal statutory scheme, was not a matter of public right, and it would not necessarily be resolved by the process of ruling on the stepson's proof of claim in the bankruptcy proceedings.

Id.

Stacey and Mary argue that Stern claims are any claims that are based purely on state law and that their claim for adverse possession is a matter of state law.  Thus, they argue that the bankruptcy court did not have the authority to enter an order which found that they had not established title through adverse possession.

Stacey and Mary have waived their right to object to the bankruptcy court's authority.  "The issue in Stern only invoked the bankruptcy court's authorization to enter a final judgment and not the subject matter jurisdiction of the court."  In re Washington Coast I, L.L.C., 485 B.R. 393, 407 (9th Cir. BAP 2012).  "Therefore, ... Stern does not affect the parties' ability to consent to the authority (constitutional or otherwise) of the bankruptcy court to enter a final judgment in" a core proceeding.  Id.  "The Supreme Court explicitly stated in Stern that constitutional rights may be forfeited by a party's failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."

Id. at 408.  Because Stacey and Mary did not object to the bankruptcy court's authority prior to this appeal, they have waived their right to do so.

But even if Stacey and Mary could raise this argument on appeal, this argument is meritless.  To a large degree, Stacey and Mary are arguing that the portion of the Pilgrim Springs property that they have title to by adverse possession was not a part of the bankruptcy estate.  Thus, resolution of Stacey and Mary's claimed interest in the Pilgrim Springs property was necessary for the proper administration of the bankruptcy estate.  As one court has explained,

> [i]f every bankruptcy proceeding requires the exercise of exclusive jurisdiction over all the debtor's property [and] the equitable distribution of that property among the debtor's creditors a bankruptcy court must surely have the constitutional authority to determine what is, and what is not, property of the bankruptcy estate ... and to determine whether another's interest in that property should be invalidated.

In re Visser, Bankruptcy No. 11–41345–JDP, Adversary No. 12–8043–JDP, 2013 WL 1337327, at *5 (Bankr. D. Idaho 2013) (citation omitted); see also, In re Motors Liquidation Co., 522 B.R. 13, 26-27 (Bankr. S.D.N.Y. 2014) (holding that a motion "seeking enforcement of a sale order entered in connection with a section 363 sale" was within bankruptcy court's "constitutional power"); In re Christ Hospital, 502 B.R. 158, 185 (Bankr. D.N.J. 2013) ("This court's jurisdiction to interpret and enforce its sale and confirmation orders is historic and unimpeded by Stern v. Marshall or other recent developments in the law").

Stacey and Mary next argue that the bankruptcy court erred in holding that they were not entitled to actual notice prior to the sale of the Pilgrim Springs property under 11 U.S.C. § 363(f). "Notice analysis takes place on two levels, statutory requirements and constitutional due process concerns." In re Ex-Cel Concrete Co., 178 B.R. 198, 202 (9th Cir. BAP 1995). Section 363 "provides that, '[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.'" Id. (quoting 11 U.S.C. § 363(b)(1) (emphasis supplied)).

> Rule 6004(a) implements § 363. It provides that notice of a proposed sale not in the ordinary course of business is to be given pursuant to Rule 2002(a)(2). Rule 2002(a)(2) in turn states that all parties in interest are to be given 20 days notice by mail of a proposed sale outside the ordinary course of business. Rule 2002(c) states that subject to Rule 6004, the notice of a proposed sale must include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections.
>
> Rule 6004(c) provides that a motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by Rule 6004(a) is to include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor. A motion is to be served in the manner of serving a summons and complaint by Rule 7004.

In re Metzger, 346 B.R. 806, 815 (Bankr. N.D. Cal. 2006). "These interrelated Code sections and Rules have been deliberately crafted to provide procedural assurance that a party holding or claiming an interest in real property in a debtor's estate will receive timely

notice of the intention to sell specific property free and clear of liens." Id. (emphasis added).

> "[T]he due process clause of the Fifth Amendment requires that notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections."

Id. (quoting Ex-Cel, 178 B.R. at 203). "The notice required depends upon the factual context in which it is to be given, but generally actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." In re Argonaut Financial Services, Inc., 164 B.R. 107, 111 (N.D. Cal. 1994) (citations omitted).

The bankruptcy court found that CBNA knew that Stacey and Mary had a cabin on the property, but that "this use was consistent with that historically permitted by PSL."[46] Moreover, the bankruptcy court found that "when Stacey and Mary were presented with the opportunity to inform CBNA of their ownership interest, they simply, and politely, declined to pay rent."[47] The bankruptcy court concluded that under the facts of this case, "CBNA considered the Green family, including Louie Jr., Stacey, and Mary to be

---

[46]Docket No. 4-3 at 194.

[47]Docket No. 4-3 at 194-95.

employees or agents of the lessee who remained on the property after the lease under which they were allowed onto the Property was terminated."[48]  In short, the bankruptcy court found that Stacey and Mary did not "assert any ownership interest[]" but rather were using the land with the permission of PSL and thus CBNA could not have known that Stacey and Mary were claiming an interest in the property.[49]  Because CBNA could not have known that Stacey and Mary were claiming an interest in the property, the bankruptcy court concluded that they were not entitled to actual notice.

This was error.  Because CBNA was on notice that Stacey and Mary had built a cabin on the Pilgrim Springs property, CBNA knew that Stacey and Mary occupied some portion of that property and might therefore have a claim to both the cabin and some of the land. Stacey and Mary's claimed interest was not conjectural.  It was based on their use and occupancy of the property, use and occupancy of which CBNA was aware.  Contrary to Unaatuq's contention, Stacey and Mary did not have to prove their interest nor did they have to have a recorded interest in the property in order to be entitled to actual notice. Rather, because CBNA knew that Stacey and Mary were claiming an interest in the property, CBNA was required to provide Stacey and Mary with notice.  The facts suggest that CBNA could have reasonably ascertained an address for Stacey and Mary or CBNA

---

[48]Docket No. 4-3 at 195.

[49]Docket No. 4-3 at 195.

could have caused notice to be served on Stacey and Mary at their cabin. Thus, in order to comport with due process, CBNA was required to provide them <u>actual</u> notice. Notice by publication was not sufficient under the facts of this case. Stacey and Mary were entitled to actual notice of the sale of the Pilgrim Springs property pursuant to Rule 2002(a)(2) and the Due Process clause of the Constitution, and the bankruptcy court erred in holding that they were not.

The question then becomes whether this error was harmless. "The court will not reverse a bankruptcy court's decision on appeal on the basis of an error that does not affect the parties' substantial rights." <u>In re Houng</u>, 499 B.R. 751, 763 (C.D. Cal. 2013) (citing <u>In re Garvida</u>, 347 B.R. 697, 704 (9th Cir. BAP 2006) (citing 28 U.S.C. § 2111; Fed. R. Bankr. Proc. 9005 (incorporating Fed. R. Civ. Proc. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties")). The court must ignore harmless error. <u>In re Mbunda</u>, 484 B.R. 344, 355 (9th Cir. BAP 2012).

The bankruptcy court determined that Stacey and Mary 's adverse possession claim was tolled as to CBNA during the time PSL was leasing the property. If this determination was correct, the bankruptcy court's error as to actual notice was harmless because even if Stacey and Mary had been given actual notice of the proposed sale so that an adversary proceeding could have been commenced, discovery taken, and an evidentiary hearing held, the outcome would have been the same, given that the tolling issue is a legal question. <u>See</u>

<u>Beesley v. Van Doren</u>, 873 P.2d 1280, 1281 (Alaska 1994) (question of law whether the statute of limitations was tolled).

"Until amendments made in 2003, adverse possession was governed by two statutory sections[,]" only one of which is relevant here, AS 09.10.030. <u>Dault v. Shaw</u>, 322 P.3d 84, 92 (Alaska 2013).

> AS 09.10.030[] provided:
>
> No person may bring an action for the recovery of real property, or for the recovery of the possession of it unless commenced within 10 years. No action may be maintained for the recovery unless it appears that the plaintiff, an ancestor, a predecessor, or the grantor of the plaintiff was seized or possessed of the premises in question within 10 years before the commencement of action.

<u>Id.</u> "Although in form simply a statute of limitations, this section served as the basis for establishing new title through adverse possession." <u>Id.</u> Under the pre-2003 version of AS 09.10.030,[50] persons without color of title claiming adverse possession had to "show[] that their use of the land was continuous, open and notorious, exclusive, and hostile to the true owners of the land for" ten years. <u>Cowan v. Yeisley</u>, 255 P.3d 966, 972 (Alaska 2011).

The bankruptcy court determined that the adverse possession period for Stacey and Mary's claim had been tolled as to CBNA while PSL's lease was in effect. The bankruptcy court noted that "the District Court" had "concluded that [Louis Sr. and Nancy] had no

---

[50]The pre-2003 version of Section .030 does not differ substantively from the post-2003 version of Section .030(a).

'realistic probability' of succeeding on their adverse possession claim ... because 'under the principles of common law, the running of a limitation period that operates as vesting title by adverse possession is postponed or tolled until the interest becomes possessory.'"[51] The bankruptcy court found that a landlord, such as CBNA, "lacks standing to maintain a legal challenge to anyone asserting possession – that cause of action belongs exclusively to the lessee."[52] This finding was based on the common law principle that "'in actions to recover possession of land or to establish title to interests therein brought by the owner of a legal estate which is or at one time was a future interest, the statutory period does not commence to run before such estate becomes a present interest.'"[53]

Stacey and Mary argue that the bankruptcy court erred in applying the common law and that the bankruptcy court should have looked to Alaska law instead, in particular to Shilts v. Young, 567 P.2d 769 (Alaska 1977). There, "Robert Young brought a quiet title suit claiming title to all eighty acres" of land "located on Prince of Wales Island by adverse possession and under claim and color of title. William Shilts counter-claimed contending that he has record title to 240,000 square feet of the property and that Robert Young has not

_____

[51]Docket No. 4-3 at 184-185 (quoting Am. Order, entered March 4, 2010 in USDA Appeal No. 4:10-cv-0004-RRB [etc.]).

[52]Docket No. 4-3 at 186.

[53]Docket No. 4-3 at 185 (emphasis omitted) (quoting Restatement (First) of Property § 222).

established title by adverse possession." Id. at 770-71. In a footnote, the Alaska Supreme

Court noted that the trial

> court in its conclusions of law stated that William Shilts had
> not been seized or possessed of the property for a period of
> time in excess of ten years. "Seisin" has a variety of meanings
> in the law. Black's Law Dictionary p. 1524 (4th ed. 1951). We
> assume that the court was equating "seized" with physical
> possession of the land in view of the finding that the land
> described in the deed could be located. Having record title,
> Shilts was "seized" of the land in the title sense of the term. It
> is not necessary for a titleholder to be in physical possession of
> land for any period of time in order to assert his rights. AS
> 09.10.030 states in part that an action for recovery of real
> property may not be maintained unless the plaintiff or his
> predecessor was "seized or possessed of the premises in
> question within 10 years before the commencement of the
> action." The statute uses the term "seized" in the sense of
> having legal title.

Id. at 775 n.21. Because CBNA had legal title to the Pilgrim Springs property at all times

prior to the sale to Unaatuq, Stacey and Mary argue that CBNA could have asserted its

rights under AS 09.10.030 and thus the bankruptcy court erred in finding their statutory

period for a claim of adverse possession had been tolled during the time PSL was leasing

the property.

Stacey and Mary also cite to Glover v. Glover, 92 P.3d 387 (Alaska 2004), in support

of their argument. There, the court rejected an argument that a tenant's possession had

been hostile because no rent was paid. Id. at 393. The court explained that "[t]o become

an adverse possessor, any tenant, including a tenant at sufferance, 'must openly and

explicitly disclaim and disavow any and all holding under his former landlord; and, furthermore, he must unreservedly and steadily assert that he himself is the owner of the true title.'" Id. (quoting Nessley v. Ladd, 45 P. 904, 908 (Or. 1896)). Stacey and Mary argue that if, as the bankruptcy court determined, the statutory period is tolled while a property is leased because the landlord has only a reversionary possessory interest, it would be impossible for a tenant to adversely possess land against his landlord. Yet, according to Stacey and Mary, in Glover, the Alaska Supreme Court indicated that a tenant could adversely possess land against his landlord. Thus, Stacey and Mary argue that the bankruptcy court plainly erred in holding that the statutory period was tolled as to CBNA while the property was leased.

Stacey and Mary's reliance on Shilts and Glover is misplaced as neither are factually similar to this case. Here, third parties are claiming that they adversely possessed property during the time the legal owner of the property had leased the property to another. Neither Shilts nor Glover involved a lease nor an adverse possessionn claim by someone other than the lessee. These are critical differences. Although CBNA did always have fee title to the property, it was not in possession of the property during the time of the PSL lease. Rather, during that time, CBNA had a reversionary or future possessory interest. No Alaska case has held that the statutory period for an adverse possession claim can commence when the legal owner of the property has only a reversionary or future possessory interest. Thus, the bankruptcy court did not err in looking to principles of

common law.  Under those principles, the statutory period for an adverse possession claim does not begin to run against the legal owner of the property until the legal owner has a present interest in the property.[54]  CBNA did not have a present interest in the Pilgrim Springs property until it terminated PSL's lease in December 2008.  The bankruptcy court did not err in determining that the ten-year period for Stacey and Mary's claim of adverse possession as to CBNA was tolled while PSL was leasing the property.

Because the bankruptcy court did not err as to the tolling issue, the court need not consider Stacey and Mary's argument that the bankruptcy court erred in finding that they failed to demonstrate that they owned an interest in the Pilgrim Springs property by adverse possession or their argument that the bankruptcy court erred in determining the merits of their state-law adverse possession claim without an adversary proceeding.  Any error as to these issues would have been harmless.

## Conclusion

Based on the foregoing, the bankruptcy court's order granting Unaatuq's Motion to Enforce Sale and Related Orders and Denying Request of Rule 60(b) Relief is affirmed.

DATED at Anchorage, Alaska, this 12th day of February, 2015.

/s/ H. Russel Holland
United States District Judge

---

[54]Restatement (First) of Property § 222 (1936).